**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DANNY LAWRENCE, JR.,                     )
                                         )     Civil Action No. 10 – 433
                      Plaintiff,         )
                                         )     Chief Magistrate Judge Lisa Pupo Lenihan
          v.                             )
                                         )     ECF No. 32
MICHAEL NETZLOF and the NEW              )
KENSINGTON POLICE DEPARTMENT,            )
                                         )
                      Defendants.        )

## OPINION

LENIHAN, M.J.

      Currently before the Court for disposition is a Motion for Summary Judgment filed by

Defendants Michael Netzlof and the New Kensington Police Department (ECF No. 32) in this

civil rights action.  Plaintiff instituted this lawsuit pursuant to 42 U.S.C. § 1983 on April 1, 2010,

alleging a violation of his constitutional rights under the Fourth Amendment and the Eighth

Amendment for "excessive force on citizens" and "medical negligence" in relation to his arrest

on August 31, 2008.  This Court has subject matter jurisdiction over this case pursuant to 28

U.S.C. §§ 1331, 1343.   Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## I.      FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

      At approximately 4:00 a.m. on August 31, 2008, Defendant, Michael Netzlof ("Officer

Netzlof"), was performing routine patrol in his capacity as a police officer for the City of New

Kensington when he observed a vehicle being operated without any headlights. (Affidavit of

Michael Netzlof ("Netzlof Aff.") at ¶¶5-6, Defs.' App. Ex. B, ECF No. 35-2.)  Officer Netzlof

began following the vehicle and subsequently observed it travel through two stop signs without

---

[1] The facts will be viewed in a light most favorable to Plaintiff, and are not disputed unless
otherwise noted.

stopping. (Netzlof Aff. ¶7 & 9; Dep. of Danny Lawrence, Jr. ("Pl.'s Dep.") at 71, Defs.' App. Ex. A, ECF No. 35-1.) Officer Netzlof, who was in full police uniform and driving a marked patrol car, activated his emergency lights and attempted to stop the vehicle which was operated by the Plaintiff, Danny Lawrence, Jr. (Netzlof Aff. at ¶5, 8, & 11; Pl.'s Dep. at 45.)

Lawrence was driving to the home of his sister, Latria Giles, when Officer Netzlof began his pursuit. (Pl.'s Dep. at 41-43, 44-46.)   Over the 15-hour period preceding this incident, Lawrence had been consuming alcoholic beverages including two six-packs of beer and a pint of brandy, and admitted that he was under the influence of alcohol while driving back to his sister's house.   (Pl.'s Dep. at 37-39, 70.)   Lawrence further admitted that he failed to stop at the two stop signs, but disputes that he did not have had his headlights on, as reported by Officer Netzlof. (Pl.'s Dep. at 70-71.)[2]

Although Lawrence was aware that the police officer behind him was attempting to pull him over, he did not pull over. (Pl.'s Dep. at 45-46.)   When asked why he did not pull over, Lawrence testified that he did not feel safe where the officer was pulling him over, and that he "just . . . don't like pulling over for police, that's all."   (Pl.'s Dep. at 45-46.)   Lawrence ultimately stopped the vehicle he was driving in a parking lot a few properties away from his sister's house, got out, and ran from police. (Pl.'s Dep. at 46-47.)

---

[2] Lawrence's testimony on this issue was equivocal.  When asked if he recalled whether he had his headlights on, Lawrence responded:  "I thought I had them on, but in the report it said I didn't have them on.  So I might not have had them on.  I don't know."  Pl.'s Dep. at 70.  When asked if he had any reason to dispute what the report said, Lawrence testified:  "It was dark out. Usually when I get in the car, usually I turn the lights on.  But if he said it was off . . .  That's just what the police report said."  *Id.* at 71.  But Lawrence then stated that he did not agree with the statement in the police report that his headlights were off.  *Id.*  Lawrence's testimony notwithstanding, whether his headlights were off is not material to resolving his claims against the Defendants.

At the time he exited the vehicle and ran from the police, Lawrence was aware that the police were trying to stop him. (Netzlof Aff. at ¶¶11-12; Pl.'s Dep. at 47.)  As he was running from the police, Lawrence recalled hearing someone behind him state, "Stop, or I'll taser you." (Pl.'s Dep. at 49.)  Lawrence was not, however, tasered by the police at any time during the incident in question.  (Pl.'s Dep. at 49, 62.)

Lawrence contends that he stopped running when he tripped over something or otherwise lost his footing, and fell, landing on his chest, and then laid on the ground on his stomach. (Pl.'s Dep. at 51-52; Netzlof Aff. at ¶12.)  Officer Netzlof reported seeing Lawrence run into a stair rail, fall over a 4-foot high drop-off, and land on the surface below. (Netzlof Aff. at ¶12; New Kensington Police Investigation Report ("Police Report") dated 8/31/08 at 16, ECF No. 35-2 at 7.)  Lawrence disputes Officer Netzlof's account as to the cause of his fall and submits that he does not recall flipping over the stair rail and landing face first in a dark back yard, because he feels that if the fall would have been hard enough to sustain the fractures to his ribs, face and wrist, he would have reinjured his neck which he broke/fractured in 1997.[3] (Pl.'s Resp. to Mot. of Summ. J.[4] at ¶29, ECF No. 48 at 3.)  As Lawrence lay on the ground, temporarily incapacitated from the fall, Officer Netzlof placed him under arrest and applied handcuffs.

_____

[3] To support this statement, Lawrence cites to his deposition testimony at pages 49 to 42 and 55 to 57.  However, that testimony merely shows that Lawrence does not recall exactly what caused his fall when running from the police, but that he believes he may have either tripped or lost his footing, causing him to fall onto his chest.

[4] For clarity's sake, the Court will refer to Plaintiff's Response to Motion of Summary Judgment (ECF No. 48) as "Plaintiff's Supplemental Response to Summary Judgment."  The Court notes that Lawrence states at the beginning of his Supplemental Response that he is submitted this "Unverified Statement in support of Opposition of Motion of Summary Judgment," and at the end of the document declares that "under penalty of perjury that the foregoing is true and correct. Executed this 13 day of September, 2012." ECF No. 48 at 1, 5.  In light of Lawrence's status as a *pro se* litigant, the Court construes this document to be the equivalent of an affidavit offered in support of his opposition to the summary judgment motion.

(Netzlof Aff. at ¶13; Pl.'s Dep. at 49-52.)  Officer Netzlof then placed Lawrence into his police car and transported him to the New Kensington police station. (Netzlof Aff. at ¶17; Pl.'s Dep. at 52-55.)

While in custody at the police station, Lawrence made no complaints to New Kensington police about any pain, symptoms, or injuries. (Pl.'s Dep. at 57-58.)[5]  At approximately 4:42 a.m., New Kensington police summoned EMS personnel to evaluate Lawrence as to any injuries he may have sustained as a result of his fall.  (Netzlof Aff. ¶¶17-18; New Kensington Ambulance Service ("Ambulance Service") records, Defs.' App. Ex. C, ECF No. 35-3 at 2.)  The records of the Ambulance Service indicate that EMS personnel arrived at the police station at approximately 4:45 a.m. on August 31, 2008, and treated Lawrence for minor cuts sustained in the fall.  (Netzlof Aff. ¶19; Defs.' App. Ex. C, ECF No. 35-3 at 2.)  The Ambulance Service's records further indicate that Lawrnece was alert, oriented, and had no loss of consciousness at the time he was examined by the EMS personnel.  (Defs.' App. Ex. C, ECF No. 35-3 at 2-3.)  However, Lawrence refused any further evaluation or treatment by EMS personnel or to be transported to hospital at that time. (*Id.* at 2.)[6]

---

[5] In his Supplemental Response, Lawrence presents the following query:  If he was unconscious, how could he ask for help?  (Pl.'s Supp. Resp. to Summ. J. at ¶37, ECF No. 48 at 4.)  Lawrence submits that this is a question for fact for the jury; however, his unsupported query is not sufficient to raise a question of fact for the jury, especially in light of the record evidence, in particular, the New Kensington Ambulance Service's records which show that Lawrence was alert, oriented, and conscious at the time he was examined by the EMS personnel at the police station.  (Defs. App. Ex. C, ECF No. 35-3 at 2-3.)

[6] Lawrence disputes that the EMS personnel were summoned and that they treated him at the police station.  (Pl.'s Supp. Resp. to Summ. J. at ¶¶38-40.)  In support of his dispute, Lawrence states that there is nothing in the Police Report about any EMS being called to the police station, except for Officer Netzlof's affidavit which was only recently filed on February 22, 2012, thus intimating that Officer Netzlof made this up after the fact.  Lawrence's dispute is completely unfounded.  The Police Report dated 8/31/08 does in fact note that "[Lawrence] was treated for minor cuts from the fall by New Kensington Ambulance."  *See* Defs.' App. Ex. B at 16, ECF No.

Lawrence remembers arriving at the New Kensington police station, but remembers nothing after that until he was woken up by the sheriff later that morning. (Pl.'s. Dep. at 55).[7] At that time, Lawrence was in a cell when he was awaked by the sheriff calling his name.  (Pl.'s Dep. at 55-56.)  When Lawrence walked out of the cell, he contends that the sheriff said to him, "They did a number on you."   (Pl.'s Dep. at 56.)   Lawrence understood the sheriff's remark to "mean[ ] [his] injuries [that he went to the hospital for] and how [he] looked."  (*Id.*)

Later that same day, the sheriff arranged for Lawrence to be transported to the Westmoreland County Jail ("WCJ").  (Pl.'s Dep. at 57-58.)  However, when he arrived at WCJ, jail officials would not admit him until he had been examined and treated at the hospital for the injuries he allegedly sustained earlier that day.  (*Id.* at 57.)  Shortly thereafter, Lawrence was transported to the hospital for evaluation and treatment of injuries consisting of fractured ribs, fractured facial bones, and a fractured wrist. (Pl.'s Dep. at 56-57, 66.)[8]  Lawrence contends that he remained hospitalized for four days for treatment of these injuries.  (Pl.'s Dep. at 62.)

---

35-2 at 7.  In addition, the Ambulance Service's records confirm that EMS personnel treated Lawrence at the police station on August 31, 2008.  As Lawrence has not pointed to any evidence in the record that supports his contrary position, he has failed to raise a genuine issue of fact as to his treatment by EMS personnel.

[7] In Plaintiff's Complaint, he alleges he was struck from behind and knocked unconscious after arriving at the police station. (Pl.'s Compl. at ¶IV, ECF No. 3.) In his deposition, Plaintiff testified he did not remember anything between arriving at the police station and waking up later that morning in a cell.  (Defs.' Dep. Ex. A at 55, ECF No. 35-1). No medical evidence has been presented in support of a head injury of any kind and head findings were noted as unremarkable by the New Kensington Ambulance Service. (Ambulance Service records, Defs.' App. Ex. C, ECF No. 35-3 at 2.)

[8] For purposes of the summary judgment motion only, Defendants do not dispute that Lawrence sustained these injuries, but argue instead that he has failed to adduce any evidence to show that the alleged injuries were caused by any unlawful conduct on their part.  (Defs. Concise Stmts. Mat. Fact ("CSMF"), ¶31 & n. 1, ECF No. 34 at 4.)

Lawrence disputes that he sustained these injuries when he fell because his sister and brother-in-law saw him get arrested and get into the police car and he did not have those injuries. (Pl.'s Dep. at 58.)  Lawrence testified that his sister and brother-in-law told him they saw him getting into the police car and that's all they saw.  (Pl.'s Dep. at 59.)  Lawrence also testified that it was dark at the time of the incident resulting in his arrest.  (Pl.'s Dep. at 40-41.)  When asked at his deposition whether he has any evidence as to how he sustained these alleged injuries, if not from his fall, Lawrence responded, "No."  (Pl.'s Dep. at 59-60.)  However, in his submissions in opposition to summary judgment, Lawrence explained that he thought counsel was asking him if he had any evidence with him at the deposition.  (Pl.'s Br. in Supp. of Opp'n of Mot. of Summ. J. ("Pl.'s Br. in Opp'n") at ¶31, ECF No. 46 at 2; Pl.'s Supp. Resp. to Summ. J. at ¶31, ECF No. 48 at 3.)  Lawrence now submits that he has evidence which consists of photos of him after the fall (currently in his sister's possession) and medical records.  (Pl.'s Br. in Opp'n at ¶31, ECF No.46 at 2.)  However, to date, Lawrence has failed to file such evidence with the Court.[9]

In connection with his arrest on August 31, 2008, Lawrence was charged with various criminal offenses (Defs.' App. Ex. D, ECF No. 35-4), and pled guilty to the charges of fleeing or attempting to elude a law enforcement officer, unauthorized possession of a controlled substance, and driving with a suspended license (Def.'s App. Ex. E, ECF No. 35-5.)

---

[9] Despite this Court's Order dated 9/5/12 (ECF No. 47), which instructed Lawrence to attach the evidence referred to in paragraph 31 of his brief in opposition to summary judgment to his resubmitted Unverified Statement in the form of a sworn affidavit or declaration under penalty of perjury, Lawrence has failed to attach any such evidence to his Supplemental Response filed on 9/17/12.  He represents in his Supplement Response that he is trying to obtain the photos from his sister, but offered no explanation for not attaching his medical records.  (Pl.'s Supp. Resp. to Summ. J. at ¶31.)

Thereafter, on April 1, 2010, Lawrence filed the instant lawsuit against Officer Netzlof and the New Kensington Police Department.[10] Discovery began on or about May 13, 2011 and continued for more than six (6) months (ECF Nos. 23, 29), during which time Lawrence did not conduct any discovery.  Discovery closed on January 6, 2012, and Defendants filed a Motion for Summary Judgment on February 24, 2012 (ECF No. 32), along with a concise statement of material facts and supporting brief and documents.  However, because Plaintiff had changed his residence, he did not receive a copy of the summary judgment motion and supporting papers.

On May 2, 2012 and June 18, 2012, Lawrence filed notices of change of address (ECF Nos. 38 & 40).  On June 21, 2012, the Court ordered Lawrence to file a response to the Motion for Summary Judgment no later than June 28, 2012, more than 90 days past the original due date of his response.  However, Lawrence failed to file any response by the June 28, 2012 deadline. On July 5, 2012, Lawrence requested an extension of time to file a response, claiming he never received any paperwork regarding Defendants' Motion for Summary Judgment. (ECF No. 42.) The Court granted Lawrence's request for extension on July 6, 2012, allowing him until August 3, 2012 to submit his response.  On August 15, 2012, Lawrence requested yet another extension of time to file a response to the summary judgment motion (ECF No. 43).  On August 16, 2012, the Court granted Lawrence one final extension of time, until September 4, 2012, to file a response to Defendants' summary judgment motion, concise statements of material facts, a brief, and any supporting documents in opposition to the summary judgment motion.

---

[10] Defendants submit that police departments are not suable entities, arguing that they are not persons within the meaning of Section 1983 but are merely subunits of the city, citing *Shilling v. Brush,* Civ. A. No. 4:05cv871, 2005 U.S. Dist. LEXIS 33912, at *7 (E.D.Pa. Aug. 26, 2005), and *Bonenberger v. Plymouth Township,* 132 F.3d 20, 25 n.4 (3d Cir. 1997).  The Court agrees with Defendants.  Accordingly, for purposes of the summary judgment motion, the Court will address the purported claim against the New Kensington Police Department as a claim against the City of New Kensington.

On September 4, 2012, Lawrence filed three documents in response to Defendants' summary judgment motion:  (1) a "Response:  Statement of Undisputed Facts" (ECF No. 44); (2) a "Brief In Opposing of Undisputed Material Facts" (ECF No. 45); and (3) a "Brief in Support of Opposition of Motion of Summary Judgment" (ECF No. 46) which, in essence, is an unverified statement providing an explanation for each statement of fact that he has indicated is  "not true" in his Response at ECF No. 44.   On September 5, 2012, the Court entered an order directing Plaintiff to resubmit the unverified statement contained in ECF No. 46 in the form of a sworn affidavit, and to attach as exhibits any evidence in support thereof, including but not limited to the evidence identified in paragraph 31 of ECF No. 46, on or before September 17, 2012.   The Court further instructed Lawrence that pursuant to the sham affidavit doctrine, he may not submit an affidavit which contradicts his own testimony at his deposition in order to create a material issued of fact to defeat a summary judgment motion.   ECF No. 47 at 2.   The Court further explained that it would "'disregard an affidavit that is inconsistent with an affiant's prior deposition testimony . . . unless the party relying on the affidavit in opposition to the motion can present legitimate reason for the discrepancies between the deposition and the affidavit.'"   *Id.* (quoting *Smith v. Johnson & Johnson,* 593 F.3d 280, 285 n. 3 (3d Cir. 2010)).

On September 17, 2012, Lawrence filed a Response to Motion of Summary Judgment (ECF No. 48).[11]   Defendants were given until September 24, 2012 to file a reply to Plaintiff's Supplemental Response to Summary Judgment but have not filed a reply as of this date.   Thus, the summary judgment motion is ripe for review.

---

[11] *See* Note 4, *supra.*

## II.     LEGAL STANDARD – SUMMARY JUDGMENT

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(a).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact.  *Nat'l State Bank v. Fed.l Reserve Bank of New York*, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing *Celotex,* 477 U.S. at 323-25).  Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex,* 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e) (1963).  *See also Orsatti v. New Jersey State Police,* 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing *Celotex, supra*).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form.  *See* FED. R. CIV. P. 56(c)(2); *Celotex*, 477 U.S. at 324; *J.F. Feeser, Inc., v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).

Where the non-moving party fails to respond to a summary judgment motion, that failure does not automatically result in the entry of summary judgment for the movant.   *Douglas v. Brookville Area Sch. Dist.,* 836 F.Supp. 2d 329, 351 (W.D.Pa. 2011) (citing *Anchorage Associates v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 171 (3d Cir. 1990)). Instead, where the nonmoving party fails to properly address the moving party's assertions of fact as required by Rule 56(c), the court may give the nonmoving party yet another opportunity to properly address the asserted facts or may consider the asserted facts undisputed, or the court may "grant summary judgment only if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to [judgment as a matter of law]." Fed. R. Civ. P. 56(e)(1) - (3).   *Accord Cortez v. Ford,* No. 1:07-CV-1466, 2008 WL 4186906, at *1 (M.D.Pa. Sept. 5, 2008) (court deemed summary judgment motion unopposed where plaintiff failed to file an appropriate response despite being afforded the opportunity to respond and being advised that his failure to do so in a timely manner would result in the motion being deemed unopposed); *Robinson v. Velasquez,* No. 07-CV-3645 (KAM)(LB), 2010 WL 1010733, at *4 (E.D.N.Y. Mar. 15, 2010) (granting defendant's motion for summary judgment in §1983 action where *pro se* plaintiff failed to oppose it, despite receiving notice of the motion and supporting documents, including a notice identifying his obligations and repeated opportunity, through extensions of time, to respond, and court determined defendant was entitled to judgment as a matter of law).

## III.   ANALYSIS

### A.   <u>Fourth Amendment Excessive Force Claim Against Officer Netzlof</u>

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be

violated, and no Warrants shall issue, but upon probable cause . . . ."  U.S. Const. amend. IV.

This provision has been made applicable to the states through the Fourteenth Amendment.  *Ker*

*v. California*, 374 U.S. 23, 30 (1963).

In order to make out a claim for excessive force as an unreasonable seizure under the

Fourth Amendment, Plaintiff must show that a seizure occurred and that it was unreasonable.

*Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (alleged excessive force in course of arrest is

analyzed under Fourth Amendment).  Here, the parties do not dispute that there was a seizure of

Lawrence.  Consequently, the only issue before the Court on Lawrence's excessive force claim is

whether the force used to effect the seizure was objectively reasonable.  Whether the use of force

is objectively reasonable "requires careful attention to the facts and circumstances of each

particular case, including the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation

omitted).  Other relevant factors to be considered in determining whether the use of force is

objectively reasonable include:

> [whether] the physical force applied was of such an extent as to
> lead to injury[,] . . . the possibility that the persons subject to the
> police action are themselves violent or dangerous, the duration of
> the action, whether the action takes place in the context of
> effecting an arrest, the possibility that the suspect may be armed,
> and the number of persons with whom the police officers must
> contend at one time.

*Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) (internal citation omitted), *abrogated on*

*other grounds as recognized by Curley v. Klem*, 499 F.3d 199, 209-10 (3d Cir. 2007).

In *Graham*, the United States Supreme Court cautioned that in applying the objective

reasonableness test, "[n]ot every push or shove, even if it may later seem unnecessary in the

peace of a judge's chambers," will be deemed unreasonable.  490 U.S. at 396 (internal quotation omitted).  Instead, "[t]he calculus of reasonableness must embody allowance for the fact that 'police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'"  *Id.* at 396-97.  Finally, reasonableness must be judged from the perspective of a reasonable officer on the scene.  *Id.* at 396; *see also Curley,* 499 F.3d at 206-07.

Defendants have moved for summary judgment on Lawrence's Fourth Amendment excessive force claim, arguing in support that he has failed to adduce sufficient evidence to demonstrate a disputed material fact as to that claim.  Defendants contend that Lawrence's claim of excessive force is based upon the alleged injuries—fractured ribs, wrist and facial bones—for which he was treated at Westmoreland County Hospital following his arrest by New Kensington Police on August 31, 2008.  For purposes of summary judgment, Defendants do not dispute that Plaintiff actually sustained those injuries, but rather, Defendants submit that Lawrence has failed to adduce any evidence that the injuries resulted from any force used by Officer Netzlof.  Moreover, Defendants submit that the undisputed evidence of record shows that those injuries were self-inflicted, when Lawrence fell to the ground in the course of fleeing from police.

Summary judgment is appropriate on an excessive force claim if, as a matter of law, the evidence would not support a reasonable jury finding that the police officer's actions were objectively unreasonable.  *Groman v. Twp. of Manalapan,* 47 F.3d 628, 634 (3d Cir. 1995).  In the case at bar, this Court concludes that the record evidence does not support a reasonable jury finding that Officer Netzlof's actions were objectively unreasonable.

Lawrence alleges in his Complaint that upon arriving at the New Kensington police station, as he was exiting the police vehicle, Officer Netzlof struck him from behind knocking

12

him unconscious.  (Compl., Part IV.C., ECF No. 3 at 2.)  However, there is simply no evidence

in the record to support this allegation.  Indeed, Lawrence's own deposition testimony belies this

allegation.  First of all, nowhere in his deposition does Lawrence state that Officer Netzlof struck

him from behind or otherwise used force on him.  Instead, Lawrence testified, in essence, that he

did not recall exactly what caused his fall when he was running from the police, but he believed

he may have tripped or lost his footing.  Lawrence further testified that he does not remember

anything that happened after he arrived at the police station until he was awakened in his cell

later that morning by the sheriff.  Lawrence also testified that he did not sustain the fractures

from his fall and that his sister and brother-in-law saw him at the time he was placed in the

police car and he did not have those injuries.  However, Lawrence has not provided the Court

with the photographs his sister allegedly took of him at the time of his arrest or provided any

affidavit from his sister or brother-in-law as to what they observed at the time of his arrest.

Even if the Court gives Lawrence the benefit of all favorable inferences and assumes for

summary judgment purposes that a reasonable jury could find that he did not sustain his

fractured facial bones, wrist and ribs from his fall, Lawrence has failed to adduce any evidence to

explain how he sustained those injuries, nor has he adduced any evidence from which a

reasonable jury could find that the injuries were caused by excessive force used by Officer

Netzlof, despite being accorded several opportunities to do so by the Court.[12]  As such,

---

[12] Although Lawrence claims he sustained fractures to his facial bones, wrist, and ribs, he has not
submitted any medical records supporting same, even though he indicated in his brief in
opposition to summary judgment that he has medical records in his possession.  (Pl.'s Br. in
Opp'n at ¶31, ECF No. 46 at 2.)  Plaintiff has also failed to produce the photographs which he
refers to in his brief in opposition.  (*Id.*; Pl.'s Supp. Resp. to Summ. J. at ¶31, ECF No. 48 at 3.)
Plaintiff was given five extensions of time to respond to Defendants' summary judgment motion
for a total of 206 days, as opposed to the normal 30 days to respond.  *See* Factual Background &
Procedural History, *supra*, at 7-8.

concluding that Officer Netzlof used excessive force against Lawrence would require speculation,[13] which is insufficient to withstand summary judgment.  *Boyle v. United States,* 391 F. App'x 212, 215 (3d Cir. 2010) ("A plaintiff cannot avoid summary judgment with speculation; he must provide competent evidence from which a rational trier of fact can find in his favor.") (citing *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 252 (3d Cir. 1999), *superseded by statute on other grounds as recognized by P.P. v. West Chester Area Sch. Dist.,* 585 F.3d 727 (3d Cir. 2009)).  *See also Jackson v. Danberg,* 594 F.3d 210, 226-27 (3d Cir. 2010) (declining to make an inference in favor of class of death row inmates based on pure speculation) (citing *Acumed LLC v. Advanced Surgical Servs., Inc.,* 561 F.3d 199, 228 (3d Cir. 2009) ("speculation and conjecture may not defeat a motion for summary judgment")); *Longstreet v. Holy Spirit Hosp.,* 67 F. App'x 123, 126 (3d Cir. 2003) ("A plaintiff cannot rely upon 'unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment.'") (quoting *Solomon v. Soc'y of Auto. Eng'rs,* 41 F. App'x 585, 586 (3d Cir. 2002)).

Accordingly, because Lawrence has failed to produce any evidence from which a reasonable jury could find that he sustained his injuries as a result of any force used by Officer Netzlof on August 31, 2008, Officer Netzlof is entitled to summary judgment on Lawrence's excessive force claim.

---

[13] Likewise, concluding that Officer Netzlof used excessive force on Lawrence from Lawrence's unsupported allegation in his Complaint that Westmoreland County Jail would not admit him because he was "badly beaten" (Compl. Part IV.C., ECF No. 3 at 2), would be pure speculation. At the police station, EMS personnel treated Lawrence for a facial laceration, and noted complaints of pain, but indicated he was asymptomatic in all other respects.  Moreover, Lawrence's deposition testimony regarding the sheriff's comment as to his appearance, i.e., "they did a number on you," although hearsay and possibly inadmissible at trial, *see* FED. R. CIV. P. 56(c)(2), in no way implicates Officer Netzlof as the perpetrator of those injuries.

**B.**     <u>**Deliberate Indifference To Serious Medical Needs**</u>

Defendants also seek summary judgment as to Lawrence's claim for "medical negligence." Defendants advance two arguments in support of same. First, Defendants submit that mere allegations of negligence in the provision of medical care to an incarcerated individual are insufficient to establish a constitutional violation. Second, Defendants argue that to the extent Lawrence's "medical negligence" claim may be construed as a claim that he was denied constitutionally adequate medical care, such claim must fail as the undisputed evidence of record is grossly insufficient to establish that Lawrence was unconstitutionally denied medical assistance. In response, Lawrence submits that whether he received adequate medical treatment is a question of fact for the jury, as he denies that he was treated by EMS personnel at the police station and contends that the reason he did not complaint of pain or injuries at the police station is that he was unconscious.

Lawrence was a pretrial detainee at the time of his incarceration on August 31, 2008, and as such, his claim for inadequate medical care must be analyzed under the Fourteenth Amendment not the Eighth Amendment. *Hubbard v. Taylor,* 399 F.3d 150, 166-67 & n. 23 (3d Cir. 2005); *King v. Cnty. of Gloucester,* 302 F. App'x 92, 96 (3d Cir. 2008) (citing *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983); *Hubbard,* 399 F.3d at 166). "The applicable constitutional protection is the Due Process Clause of the Fourteenth Amendment which 'does require the responsible ... governmental agency to provide medical care' to pre-trial detainees, [*City of Revere,* 463 U.S. at 244], because the failure to do so amounts to punishment without an adjudication of guilt. *See Hubbard I,* 399 F.3d at 166." *King,* 302 F. App'x at 96. The court of appeals in *King* went on to explain:

> In assessing the denial of medical care to a pretrial detainee, the inquiry is whether the denial was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). That inquiry involves an indirect application of the Eighth Amendment deliberate indifference standard: "the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections." *Natale*, 318 F.3d at 581 (quoting *City of Revere*, 463 U.S. at 244, 103 S.Ct. 2979); *see also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979) (holding that "at a minimum the 'deliberate indifference' standard of *Estelle v. Gamble*, must be met").

*Id.*   In other words, when evaluating inadequate medical care claims by pretrial detainees, courts must apply the Eighth Amendment's deliberate indifference standard as articulated by the Supreme Court in *Estelle v. Gamble,* 429 U.S. 97 (1976), but must view this inquiry in the context of the standard articulated in *Bell v. Wolfish*, which applies Fourteenth Amendment due process principles to pretrial detainees, rather than the cruel and unusual punishment standard. *Langella v. Cnty. of McKean,* Civ. A. No. 09-cv-311E, 2010 WL 3824222, *13 (W.D.Pa. Sept. 23, 2010)(citing *Hubbard,* 399 F.3d at 165-66). *See also Montgomery v. Ray,* 145 F. App'x 738, 739-40 (3d Cir. 2005) (vacating an order and remanding case where district court evaluated pretrial detainee's claim involving inadequate medical treatment under the same standards as Eighth Amendment claims).   In *Montogmery,* the court of appeals noted its recent decision in *Hubbard,* which:

> clarified that the Eighth Amendment only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees.   While "the due process rights of a [pre-trial detainee] are *at least* as great as the Eighth Amendment protections available to a convicted prisoner," *Hubbard,* 399 F.3d at 166 (citation omitted), the proper standard for examining such claims is the standard set forth in *Bell v. Wolfish, . . . i.e.,* whether the

16

> conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt, *Hubbard,* 399 F.3d at 158.

145 F. App'x at 740 (emphasis and brackets in original).

The deliberate indifference standard under the Eighth Amendment requires the inmate to show (1) a serious medical need, and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle,* 429 U.S. at 104; *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle,* 429 U.S. at 103-04).

The Third Circuit has defined a serious medical need as: (1) "'one that has been diagnosed by a physician as requiring treatment[;]'" (2) "'one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention[;]'" or (3) one "where the denial of treatment would result in the 'unnecessary and wanton infliction of pain,' or 'a life-long handicap or permanent loss[.]'" *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), and *Estelle,* 429 U.S. at 103) (Ambro, J., dissenting). Here, Defendants do not appear to contest whether Lawrence's medical needs were serious for purposes of summary judgment, but rather, focus on the second prong of the *Estelle* inquiry. Similarly, the Court will assume, for purposes of deciding the summary judgment motion only, that Lawrence's medical needs were serious.

17

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical needs.  *See Natale*, 318 F.3d at 582.  In order to find that state officials acted with deliberate indifference, a plaintiff must prove that the official knew of and disregarded an excessive risk to inmate health or safety.  *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "'Deliberate indifference' is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm."  *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D. N.J. 2000) (citing *Farmer*, 511 U.S. at 837-38).  Thus, "in order to survive a summary judgment motion, in which the movant argues that there is an absence of evidence to support [the plaintiff's] case, the plaintiff must point to some evidence beyond [his] raw claim that [defendants] w[ere] deliberately indifferent."  *Singletary v. Pa. Dep't of Corr.,* 266 F.3d 186, 192 n.2 (3d Cir. 2001) (citing *Celotex,* 477 U.S. at 325).  In other words, the plaintiff must come forward with "some evidence 'that [defendants] knew or w[ere] aware of [the] risk [to plaintiff].'"  *Id.*

"Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference."  *Andrews*, 95 F.Supp. 2d at 228 (citing *Peterson v. Davis*, 551 F. Supp. 137, 145 (D. Md. 1982), *aff'd*, 729 F.2d 1453 (4th Cir. 1984)).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted).  "Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment.'" *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Borwing v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).  "Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth

Amendment violation, unless deliberate indifference be shown." *Andrews,* 95 F.Supp. 2d at 228 (citing *White,* 897 F.2d at 110); *see also Estelle,* 429 U.S. at 105-06.

The court of appeals for this circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *See Rouse*, 182 F.3d at 197; *see also Estelle,* 429 U.S. at 104-05 (deliberate indifference may be shown where a prison official "intentionally den[ies] or delay[s] access to medical care"). The court of appeals also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. *Atkinson*, 316 F.3d at 266; *see also Monmouth Cnty. Corr. Inst. Inmates*, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); *Durmer v. O'Carroll,* 991 F.2d 64 (3d Cir. 1993); *White*, 897 F.2d at 109-10. However, where a pretrial detainee has rejected medical assistance, deliberate indifference by the police cannot be established as a matter of law. *Groman,* 47 F.3d at 637.

In the case at bar, the record indicates that the New Kensington police department neither prevented Lawrence from receiving recommended treatment for his injuries, nor was he denied access to medical professionals capable of evaluating the need for treatment. To the contrary, the record indicates that EMS personnel from the Ambulance Service were summoned to the police station at approximately 4:42 a.m. on August 31, 2008, shortly after Lawrence's arrest, to evaluate him for possible injuries he may have sustained in his fall. (Netzlof Aff. ¶18; Defs.' App. Ex. C, ECF No. 35-3 at 2.) Lawrence was treated for a minor laceration on his face at the

police department by EMS personnel, but refused further treatment and to be transported to the hospital at that time. (Netzlof Aff. ¶19; Defs.' App. Ex. C.) Moreover, Lawrence testified that he did not complain to the police about any injuries, pain, or symptoms while he was in custody at the New Kensington police station. (Pl.'s Dep at 57-58.)[14]   Lawrence was subsequently transported to the hospital on the afternoon of August 31, 2008, where he received treatment for his alleged injuries, prior to being admitted to the Westmoreland County Jail. (Pl.'s Dep. at 57, 66.)

Thus, based on the evidence of record, the Court concludes that a reasonable jury could not find that the medical treatment received by Lawrence while incarcerated at the New Kensington police station amounted to punishment prior to an adjudication of guilt in violation of the Fourteenth Amendment, because no reasonable jury could conclude from the evidence of record that Officer Netzlof, or any other employee of the New Kensington police department, was deliberately indifferent to his medical needs.   Lawrence was provided with medical treatment by EMS personnel within a short period of time after he arrived at the police station, and he refused further treatment and transport to the hospital at that time.   The EMS personnel noted that when they examined Lawrence, he was alert, oriented, and sustained no loss of consciousness, and was asymptomatic in all other respects. Lawrence never complained of pain, symptoms or injuries to the New Kensington police or requested further medical treatment while in custody at the New Kensington police station.   Accordingly, Officer Netzlof is entitled to summary judgment on Lawrence's claim for "medical negligence."

---

[14] Lawrence attempts to create an issue of fact on this point by arguing in his Supplemental Response to Summary Judgment that he was unconscious, and therefore, could not have made any complaints of pain or injuries, but he provides no support for his position and the record evidence shows otherwise.  *See* Note 5, *supra.*

C.    **Municipal Liability Claim**

As relief in his Complaint, Lawrence asks that the City of New Kensington be held accountable for "medical negligence and excessive force on citizens." (Compl., ¶VI.)   The record in this case is devoid of any evidence raising a triable issue of fact as to the municipal liability claim against the City of New Kensington.   Nor has Lawrence presented any argument or legal authority in support of his municipal liability claim in responding to the summary judgment motion.

In light of this Court's conclusion that Officer Netzlof is entitled to summary judgment on Lawrence's Section 1983 claims against him, the Court finds, as a matter of law, that the City of New Kensington is likewise entitled to summary judgment.   A municipality cannot be held liable under 42 U.S.C. §1983 in the absence of a violation of an individual's constitutional rights by a municipal officer. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Grazier v. City of Philadelphia*, 328 F.3d 120, 124 n.5 (3d Cir. 2003).

Moreover, even if the Court (or a jury) could find liability on the part of Officer Netzlof, for purposes of Section 1983, a municipality cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.  *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978).   Rather, to prove liability on the part of the City of New Kensington, Lawrence must show that the City had in place a *relevant* policy or custom, and that said policy or custom *caused* the constitutional violations that Lawrence alleges. *Natale,* 318 F.3d at 583-84 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Ok. v. Brown,* 520 U.S. 397, 404 (1997)).   Nowhere in the record, the pleadings or in his responses to the summary judgment motion does Lawrence provide any evidence, factual allegations, or argument to support the existence of a relevant policy or custom, let alone show that a policy or custom

caused the alleged constitutional violations.   As Lawrence has failed to meet his burden of showing a material issue of fact as to the municipal liability claim against the City of New Kensington, the Court finds that a reasonable jury could not return a verdict in Lawrence's favor on this claim.   Accordingly, the City of New Kensington is entitled to summary judgment in its favor on the municipal liability claim.


## IV.   CONCLUSION

For the reasons set forth above, the Court finds that no issues of material fact exist and Defendants are entitled to judgment as a matter of law.   Accordingly, the Court will grant Defendants' motion for summary judgment.

A separate order will follow.

Dated: September 28, 2012                                      BY THE COURT:

                                                                          LISA PUPO LENIHAN
                                                                          Chief United States Magistrate Judge


cc:      Danny Lawrence Jr.. *Pro Se*
         HY 6247
         SCI Camp Hill
         P.O. Box 200
         Camp Hill, PA 17001-0200
         *Via U.S. Mail*

         Counsel of Record
         *Via Electronic Mail*